## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KERRY RICHARDS,

    Plaintiff,

    v.

THE PENNSYLVANIA STATE
UNIVERSITY,

    Defendant.

No. 4:18-CV-01909

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 24, 2023

## I.   BACKGROUND

Kerry Richards filed a complaint against The Pennsylvania State University ("Penn State"), which she later twice amended, alleging that Penn State engaged in Age Discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), and Gender Discrimination, pursuant to Title VII of the Civil Rights Act of 1964, related to Penn State's decision to terminate Richards' employment at Penn State.[1] Penn State filed an answer to the second amended complaint, and the matter proceeded through discovery.[2]

Penn State has now filed a motion for summary judgment.[3] Penn State argues that, even if Richards could make out a prima facie case of discrimination, Penn

---

[1]   Doc. 22.
[2]   Doc. 23.
[3]   Doc. 46.

State had legitimate, nondiscriminatory reasons for terminating Richards' employment, specifically, that Richards undertook a number of actions during her employment that violated Penn State policies and procedures.[4] Penn State further contends that Richards cannot establish that Penn State's reasons for her termination are pretextual, since her predecessors are not adequate comparators and she can point to no other similarly situated, younger individuals or men who were treated dissimilarly.[5]

Richards responds that she has established a prima facie case of both age and gender discrimination.[6] Richards also asserts that she has produced sufficient evidence that Penn State's nondiscriminatory reasons for her termination are merely pretextual.[7] In that vein, Richards notes that she asserted to Penn State that she was being treated differently than her male predecessors, but Penn State ignored this complaint, and asserts that she was treated less favorably than a coworker who had been accused of plagiarism but did not face discipline.[8] Richards further argues that Penn State has previously discriminated against other female employees.[9]

Penn State has filed a reply brief in which it argues that Richards must be deemed to have admitted part of Penn State's statement of material facts by virtue

---

4    Doc. 51 at 9-13.
5    *Id.* at 13-15.
6    Doc. 55 at 4-6.
7    *Id.* at 7-11.
8    *Id.* at 7-10.
9    *Id.* at 11.

of either having failed to deny those facts, or denied those facts without citation to any evidence in the record to support those denials.[10] The sum of these admitted facts, Penn State contends, sufficiently establish that Penn State had legitimate nondiscriminatory reasons for terminating Richards' employment, and that those reasons were not pretextual.[11] Penn State further asserts that Richards has failed to cite to any evidence in the record to support her claim that she has established a prima facie case of either age or gender discrimination, which further necessitates the entry of judgment in Penn State's favor.[12] Finally, Penn State argues that Richards has failed to demonstrate that Penn State's nondiscriminatory reasons for terminating Richards' employment are pretextual, and has waived any argument that her predecessors are adequate comparators.[13]

As Penn State has filed its reply brief, this matter is ripe for disposition. For the following reasons, the motion for summary judgment will be granted.

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] Material facts are those "that

---

[10]   Doc. 58 at 5-7.
[11]   *Id.* at 5-11.
[12]   *Id.* at 11-15.
[13]   *Id.* at 15-22.
[14]   Fed. R. Civ. P. 56(a).

could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[15] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[16] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[17]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[18] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[19] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[20] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[21]

---

[15]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[16]   *Clark*, 9 F.3d at 326.
[17]   *Id.*
[18]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[19]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[20]   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[21]   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[22] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[23] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[24] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[25]

### B.      Undisputed Facts

Richards was hired by Penn State in 1989 as an education program specialist with Penn State's Pesticide Education Program ("PEP"), which is a part of the Penn State Extension ("Extension").[26] Richards held several positions within PEP during her time with Penn State, and eventually served as the Director of PEP.[27] In July 2016 Richards' employment with Penn State was terminated; she is female and was fifty-five years of age at the time of her termination.[28]

---

[22]   *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[23]   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[24]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[25]   Fed. R. Civ. P. 56(c)(3).

[26]   Doc. 50 ¶ 3.

[27]   *Id.* ¶ 4.

[28]   *Id.* ¶¶ 4-5.

At the time that Richards was initially hired by Penn State, Dr. Winand Hock was the Director of PEP, and he held that position until his retirement in 2000.[29] Dr. John Ayers then assumed the Director position, which he held until his retirement in 2009.[30] Both Hock and Ayers were senior tenured faculty members prior to accepting the administrative assignment of the Director of PEP and, at that time, the role was an administrative assignment in addition to their academic responsibilities.[31] They further reported directly to the department head for the Department of Plant Pathology and one of the Deans of the College of Agricultural Sciences ("College"); neither reported to the Director of the Extension.[32]

After Ayers' retirement, Penn State reorganized the position of Director of PEP such that the role would "no longer be an academic or faculty appointment" but, instead, became a staff position that focused only "on directing and running the program."[33] As a staff position, the Director of PEP began reporting to the Director of the Extension, rather than a department head as in the past.[34] After this restructure was completed, Richards was hired in 2009 as the interim Director of PEP, and she was hired as the permanent Director of PEP in 2011.[35] Following Richards'

---

[29] *Id.* ¶ 11.
[30] *Id.* ¶ 12.
[31] *Id.* ¶¶ 14-15.
[32] *Id.* ¶ 16.
[33] *Id.* ¶ 18. This was significant because Penn State "follows different policies and termination procedures for tenured faculty as compared to staff." *Id.* ¶ 65.
[34] *Id.* ¶ 19.
[35] *Id.* ¶¶ 20, 26.

appointment as the Director of PEP, she reported to the interim director of the Extension, Dennis Calvin, who had not previously supervised any other Director of PEP.[36] Calvin did not know how the previous Directors of PEP had "interpreted or implemented policies, and did not know if they had or had not followed policies."[37] Calvin supervised Richards until her termination in 2016.[38]

In the autumn of 2015, Penn State's Internal Audit Department ("Audit Department") audited PEP after noticing "certain questionable transactions and practices."[39] The Audit Department reviewed "unusual purchases which included a high volume of purchases through Verizon as well as the purchase of Louisiana State University ("LSU") gear which was described as a give-away for outreach events."[40] The Audit Department discovered that the purchase of LSU gear was inaccurately described, as the gear was actually a going-away gift for a PEP intern—who was Richards' son—and "was improperly posted to a sponsored award, meaning the funds were allocated for a specific purpose under the grant or contract."[41]

Following the initial investigation, the Audit Department uncovered and began to investigate "other questionable practices within . . . PEP."[42] After an investigation, the Audit Department concluded—although Richards denies—that

---

[36] *Id.* ¶¶ 22(b), 23-24.
[37] *Id.* ¶ 24.
[38] *Id.* ¶ 29.
[39] *Id.* ¶ 35.
[40] *Id.* ¶ 41.
[41] *Id.* ¶ 43; *see id.* ¶ 42.
[42] *Id.* ¶ 46.; *see id.* ¶¶ 47-48.

PEP improperly utilized an outside vendor as a sole source vendor "without going through the appropriate bid procedure in the purchasing department and without providing a sole source justification as to why another vendor could not be chosen" and, as part of that agreement, Richards authorized payment in July 2015 for services to be rendered in August 2015.[43] The Audit Department further concluded—although Richards again contests—that Richards had violated Penn State policy "by allowing an Agricultural Sciences retiree to perform work for PEP as an independent contractor for" the outside vendor and "by allowing a current part-time employee of the PEP to work the maximum number of hours allowable for a part-time employee and record excess hours worked for the PEP as an independent contractor."[44]

The Audit Department also determined that:

- Richards violated Penn State policy by submitting three payroll timecards on behalf of her husband, who was "an occasional wage part-time employee," and by supervising his work "in an effort to keep him in active status and avoid having to post the position to be filled by other possible candidates";[45]

---

[43] *Id.* ¶ 49(a), (b); Doc. 54 ¶ 49(a), (b).
[44] Doc. 50 ¶ 49(c), (d); Doc. 54 ¶ 49(c), (d).
[45] Doc. 50 ¶ 49(g).

- Richards violated Penn State policy "by instructing student wage employees to submit an additional eight hours on their timesheets in order to reward them for exceptional work on a project";[46]

- Richards violated Penn State procedures for certain staff "by awarding four hours of compensatory time for overnight stays required by travel time by both exempt and non-exempt employees;"[47] and

- Richards "failed to report that she had lost her [Penn State]-issued laptop at the time it was lost, reporting it only months later after inquiry during the audit. This required cancellation of her [Penn State] purchasing card that was active at the time the laptop was lost."[48]

As a result of this investigation, in February 2016, Richards was placed on indefinite unpaid administrative leave.[49] During a meeting with Calvin and Erikka Runkle, the human resources director for the College, Richards asserted that her predecessors had done many of the same things that she was now accused of doing.[50] After this meeting, the Dean of the College, Dr. Richard Roush, decided to terminate Richards' employment, and Richards was terminated from her position in July

---

[46] *Id.* ¶ 49(h).
[47] *Id.* ¶ 49(i).
[48] *Id.* ¶ 49(j).
[49] *Id.* ¶ 52.
[50] *Id.* ¶ 59.

2016.[51] A memorandum was prepared that outlined the alleged reasons for Richards' termination, which included the previously discussed issues.[52]

Following Richards' termination, Chris Houser, a male of roughly the same age as Richards, was selected as the interim Director of PEP.[53] During that time, PEP was reorganized such that it was no longer a standalone entity but is, instead, only a branch of a larger division, with its director reporting to a different mid-level director.[54] Following that reorganization, John Johnson was hired as the manager of PEP;[55] he is a male who is "in his late forties."[56]

## C.   Analysis

### 1.   Whether Certain Facts are Deemed Admitted

Before proceeding to the merits of Penn State's motion, the Court first addresses the question of whether certain facts presented in Penn State's statement

---

[51]   *Id.* ¶¶ 60, 67.

[52]   *Id.* ¶¶ 68-69.

[53]   *Id.* ¶ 70. The parties dispute Houser's age, with Penn State asserting that Houser "was of a similar age range to Richards," *id.*, while Richards contends that Houser "was a considerably younger male." Doc. 54 ¶ 70. Despite Richards' assertion, she only cites to deposition testimony wherein Calvin states that he is not certain of Houser's age, but that Houser is "probably in [Richards'] age range." *Id.* ¶ 90; Doc. 54-4 at 12. Accordingly, the Court must conclude that Houser was roughly the same age as Richards, despite her general denial of this fact.

[54]   Doc. 50 ¶ 72.

[55]   *Id.* ¶ 73

[56]   Doc. 55 at 5. Neither of the statements of material fact provide Johnson's age, nor do any of the provided deposition transcripts reveal his age. As such, for the purpose of this motion, the Court relies on the representation made by Richards in her brief in opposition to Penn State's motion for summary judgment.

of material facts should be deemed admitted based upon Richards' failure to properly contest those facts.

This Court's Local Rule 56.1 requires that, in opposition to a motion for summary judgment, the opposing party "include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [movant's] statement [of material facts] as to which it is contended that there exists a genuine issue to be tried." That Rule further provides that the failure to so do will result in any uncontested portion of the movant's statement of material facts being deemed admitted. As judges within this District have routinely noted, to comply with Local Rule 56.1, a party must "(1) clearly and unequivocally admit or deny whether each fact contained in [the movant's] statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) provide a citation to the record that supports any such denial."[57] Accordingly, any denial of an opposing party's statement of material facts "without citation to the record . . . shall be deemed admitted pursuant to Local Rule 56.1."[58]

Here, Richards denied, without citation to the record, several paragraphs and subparagraphs of Penn State's statement of material facts, including, as most relevant here, paragraphs 49(g), 49(h), 49(i), and 49(j).[59] Because Richards' blanket

---

[57] *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016).

[58] *Knapp v. U.S. Dep't of Health & Hum. Servs.*, No. CV 3:18-1422, 2020 WL 969624, at *1 (M.D. Pa. Feb. 28, 2020), *aff'd*, 836 F. App'x 86 (3d Cir. 2020).

[59] *See* Doc. 54 at 5.

denials in those subparagraphs do not comply with Local Rule 56.1, those subparagraphs of Penn State's statement of material facts are deemed admitted.

## 2. Gender Discrimination

Turning to the merits of Penn State's motion, the Court first addresses Richards' claim for gender discrimination under Title VII. "Title VII prohibits employers from engaging in discrimination on the basis of race, color, religion, sex or national origin."[60] "To prevail on a claim for sex discrimination under Title VII . . . [Richards] must satisfy the three-step burden-shifting inquiry under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973)."[61] "First, she must establish a prima facie case of sex discrimination. If she succeeds, the burden shifts to [Penn State] to advance a legitimate, non-retaliatory reason for its action."[62] "If [Penn State] advances such a position, the burden shifts back to [Richards] to prove that the nondiscriminatory explanation is merely a pretext for discrimination."[63]

To establish a prima facie case of gender discrimination at the first step, a plaintiff must demonstrate: "(1) that s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to retain; (3) s/he suffered an adverse

---

[60]  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 453-54 (3d Cir. 2006).
[61]  *Id.* at 454.
[62]  *Id.*
[63]  *Id.*

employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."[64]

Here, Penn State does not contest that Richards has established the first three elements of a prima facie case: Richards is female, she was qualified for her position, and she suffered an adverse employment action when she was fired from that position. Penn State asserts, however, that Richards cannot meet the fourth element, as the circumstances of her termination do not give rise to an inference of gender discrimination.[65] However, it is undisputed that Richards is female, and her replacements were male.[66] This Court has previously held that a plaintiff may establish a prima facie case of gender discrimination by demonstrating that she was "replaced by a person who is a member of the opposite gender."[67] Consequently, Richards has established a prima facie case of gender discrimination, and the burden therefore shifts to Penn State to present legitimate, non-retaliatory reasons for terminating Richards' employment.[68]

The Court concludes that Penn State has met its burden. Specifically, as discussed previously, Richards has admitted that she: (1) violated Penn State policy by submitting three payroll timecards on behalf of her husband, who was "an

---

[64] *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020) (ellipsis and internal quotation marks omitted).

[65] Doc. 58 at 12-15.

[66] Doc. 50 ¶¶ 70, 73.

[67] *Morgenfruh v. Larson Design Grp., Inc.*, No. 4:18-CV-00021, 2019 WL 4511711, at *3 (M.D. Pa. Sept. 19, 2019), *aff'd*, 826 F. App'x 141 (3d Cir. 2020).

[68] *Atkinson*, 460 F.3d at 454.

occasional wage part-time employee," and by supervising his work "in an effort to keep him in active status and avoid having to post the position to be filled by other possible candidates";[69] (2) violated Penn State policy "by instructing student wage employees to submit an additional eight hours on their timesheets in order to reward them for exceptional work on a project";[70] (3) violated Penn State procedures for certain staff "by awarding four hours of compensatory time for overnight stays required by travel time by both exempt and non-exempt employees;"[71] and (4) "failed to report that she had lost her [Penn State]-issued laptop at the time it was lost, reporting it only months later after inquiry during the audit."[72] These violations of Penn State policy collectively form a legitimate, nondiscriminatory reason for Richards' termination.

Because Penn State has advanced a nondiscriminatory reason for Richards' firing, Richards must demonstrate "that the nondiscriminatory explanation is merely a pretext for discrimination."[73] The United States Court of Appeals for the Third Circuit has "recognized two ways in which a plaintiff can prove pretext."[74] "First, the plaintiff can present evidence that casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably

---

[69]   Doc. 50 ¶ 49(g).
[70]   *Id.* ¶ 49(h).
[71]   *Id.* ¶ 49(i).
[72]   *Id.* ¶ 49(j).
[73]   *Atkinson*, 460 F.3d at 454.
[74]   *Id.*

conclude that each reason was a fabrication."[75] "The nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."[76] "The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."[77] "Second, and alternatively, the plaintiff can provide evidence that allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[78]

Richards argues that she has cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication.[79] Specifically, she contends that Penn State "fired her for doing things the same way her male predecessors had done things" and ignored her statements informing Penn State of that fact.[80] Richards further argues that "Penn State's HR representative testified that even if policies are the same and men in the same position engaged in the exact same conduct as a similarly situated

---

[75] *Id.* (internal quotation marks omitted).
[76] *Id.* (brackets and internal quotation marks omitted).
[77] *Id.* (internal quotation marks omitted).
[78] *Id.* (internal quotation marks omitted).
[79] Doc. 55 at 9-10.
[80] *Id.* at 9.

female employee but were treated differently, Penn State did not consider that to be discrimination."[81]

As to Richards' first point, her proffered evidence does not support the broad assertion that she now makes. Although Richards definitively asserts in her statement of material facts that she "conducted herself and ran the department in the same manner as her male predecessors,"[82] her cited evidence does not support her assertion. Rather, the cited materials are simply depositions of Penn State employees in which they confirm that Richards informed them that she believed her predecessors had run the department in the same manner as she did and she believed she was being treated differently.[83]

Although Richards clearly asserts that she believes she was treated differently than her male predecessors,[84] she has produced no evidence before this Court to support the notion that she was *actually* treated differently nor, apparently, did she produce such evidence to Penn State at the time of its investigation.[85] Richards has not identified any Penn State policy or procedure that she was accused of violating and that either of her predecessors had also violated.

---

[81]   *Id.* at 10.
[82]   Doc. 54 ¶ 80.
[83]   *See* Doc. 54-3 at 8; Doc. 54-4 at 5-6.
[84]   Doc. 54 ¶¶ 81, 84, 92, 98.
[85]   *See* Doc. at 54-3 at 9 (testimony of Runkle acknowledging that Penn State did not investigate whether prior Directors of PEP had violated similar Penn State regulations, but stating "if [Richards] had provided documentation or evidence or even suggestions that [others had violated Penn State policies], which we gave her multiple opportunities to do so, we would have" investigated that allegation).

16

Of equal importance, to cast doubt upon Penn State's proffered legitimate reasons for firing Richards through the use of comparators, Richards must demonstrate that her predecessors were "similarly situated in all respects—in other words, he dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct."[86] Penn State has pointed out numerous ways in which Richards and her predecessors were not similarly situated. First, Hock and Ayers were both tenured faculty members, while Richards held a non-tenured, non-faculty position.[87] Second, the position was previously an administrative assignment given to faculty members whereas, when Richards assumed the position, it was restructured as a staff position with a new reporting structure, with the Director now reporting to the Director of the Extension, rather than a department head as had previously been the case.[88] Third, Richards' supervisor, Calvin, did not supervise either Hock or Ayers, was not familiar with them, their practices, or changes in policies and procedures after they left their positions.[89] Similarly, Roush—the Dean of the College who made the ultimate decision to terminate Richards' employment—was hired during Richards' tenure and did not know Richards' predecessors.[90] Because Richards was not "similarly situated in all respects"[91] to Hock and Ayers,

---

[86] *In re Trib. Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (brackets, ellipses, and internal quotation marks omitted).
[87] Doc. 50 ¶¶ 14, 21.
[88] *Id.* ¶¶ 18-19.
[89] *Id.* ¶¶ 23-24.
[90] *Id.* ¶¶ 33-34, 60.
[91] *In re Trib. Media Co.*, 902 F.3d at 403.

any disparate treatment between them cannot serve to cast doubt upon Penn State's legitimate reasons for firing Richards.

However, this does not end the Court's inquiry, as Richards further argues[92] that there is sufficient evidence for a factfinder "to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[93] Richards may meet her burden "by showing that the employer in the past had subjected [her] to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of [her] protected class more favorably, or that the employer has discriminated against other members of [her] protected class or other protected categories of persons."[94]

Richards contends that Penn State "has previously discriminated against other female employees" and that she "was treated differently than other male employees, including her predecessors in the same position."[95] These assertions are entirely unsupported by the factual record. First, Richards has pointed to no evidence that demonstrates that Penn State has previously discriminated against women, and the paragraph of her material facts to which she cites does not exist.[96] Second, while Richards asserts that she was treated differently than her predecessors, as discussed

---

[92] Doc. 55 at 10-11.
[93] *Atkinson*, 460 F.3d at 454 (internal quotation marks omitted).
[94] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).
[95] Doc. 55 at 11.
[96] Richards cites to Paragraph 107, Doc. 55 at 11, but her statement of material facts ends at Paragraph 100. Doc. 54 at 12.

previously, the evidence to which Richards cites supports only the notion that she *believed* that she was treated differently than her predecessors, without providing any actual proof that she was in fact treated differently.[97]

Consequently, the Court concludes that Richards has failed to rebut Penn State's proffered non-discriminatory reasons for terminating her employment. Summary judgment is therefore warranted in Penn State's favor as to this claim.

### 3.   Age Discrimination

Turning then to Richards' claim for age discrimination, similar to an action under Title VII, a claim of age discrimination under the ADEA is governed by the *McDonnell Douglas* shifting burden framework.[98] To establish a prima facie case of age discrimination, a plaintiff must establish that she "(1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3)

---

[97] Richards argues that she was also treated differently than male employees in general. The only Paragraph in her statement of material facts to which she cites that could possibly support that assertion is Paragraph 96 which asserts that, in violation of Penn State policy, she "did not receive annual performance reviews like all other directors." Doc. 54 ¶ 96. However, Richards' citation to Runkle's deposition testimony does not support this assertion. Runkle stated in her deposition that she recalled Richards having some complaint about her annual performance reviews and, while Runkle could not recall the exact complaint that Richards had, Runkle did provide Richards with the performance reviews that Richards had requested—to the extent that they were still maintained pursuant to Penn State's retention policy. Doc. 54-3 at 13-14. Runkle further stated that Penn State did not have an actual policy requiring yearly performance reviews, but only required some form of a performance review if a pay raise were issued. *Id.* This evidence therefore does not support Richards' assertion that she was treated differently than male employees.

[98] *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021).

suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination."[99]

Penn State again does not contest that Richards has met the first three elements of a prima facie case. It does assert, however, that Richards has failed to demonstrate that her replacement was sufficiently younger to permit an inference of age discrimination related to her termination.[100] The Court agrees. Richards was first replaced on an interim basis by Houser, who was roughly the same age as Richards, and then later replaced by Johnson, who was in his late forties.[101] Because "these individuals' ages do not differ materially from" Richards' age of fifty-five, the Court cannot conclude, even under the summary judgment standard, that Richards was replaced "with someone sufficiently younger to permit an inference of discrimination."[102]

Accordingly, Richards has failed to establish a prima facie case of age discrimination, and Penn State is entitled to judgment in its favor on this claim as well. Even if Richards had established a prima facie case, for the reasons stated above with respect to her claim of gender discrimination, the Court would conclude

---

[99]  *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).
[100]  Doc. 58 at 11-12.
[101]  Doc. 50 ¶ 70; Doc. 55 at 5.
[102]  *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.9 (3d Cir. 2000) (concluding that seven-year age difference—one replacement employee was 49 years of age while the plaintiff was 56 years old—was insufficient to permit an inference of age discrimination).

that Richards has failed to rebut Penn State's evidence of legitimate, nondiscriminatory reasons for her termination.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Penn State's motion for summary judgment.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge